**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY L. | ) Case No. 8:24-cv-01893-SP |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| FRANK BISIGNANO, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

**I.**

**INTRODUCTION**

On August 30, 2024, plaintiff Timothy L. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of an application for supplemental security income ("SSI"). The parties have fully briefed the matter in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination was supported by substantial evidence; and (2) whether the ALJ erred at step five. Plaintiff's Brief ("P. Mem.") at 4-10; *see* Defendant's Brief ("D. Mem.") at 2-8.

1

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err at step five, but the ALJ's RFC determination was not supported by substantial evidence. The court therefore reverses the decision of the Commissioner denying benefits and remands the matter for further administrative action consistent with this decision.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 30 years old on his alleged December 10, 2019 onset date. AR at 65. Plaintiff has an 11th-grade education and has no past relevant work. AR at 86, 214.

On March 10, 2021, plaintiff filed an application for SSI due to the amputation of his right leg below the knee, congestive heart failure, high blood pressure, fluid in his chest, and an infection in his amputated limb. AR at 65. The application was denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. AR at 65-69, 71-88, 109.

On February 12, 2024, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 37-64. The ALJ also heard testimony from Michael Frank, a vocational expert ("VE"). AR at 50-63. On April 29, 2024, the ALJ denied plaintiff's claim for benefits. AR at 24-32.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since March 10, 2021, the application date. AR at 26.

At step two, the ALJ found plaintiff suffered from the following severe impairments: congestive heart failure, right leg below knee amputation, and obesity. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. AR at 27.

The ALJ then assessed plaintiff's residual functional capacity, and determined plaintiff had the RFC to perform sedentary work but was limited to: never climbing ladders, ropes, or scaffolds; occasionally performing all other postural movements; avoiding extreme temperatures and pulmonary irritants; mandatory use of a cain for any ambulation; and no foot pedals or controls operated by the lower right extremity.  AR at 28.

The ALJ found, at step four, that plaintiff has no past relevant work.  AR at 30.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy plaintiff could perform, including document preparer, call out operator, and addressor.  AR at 30-31.  Consequently, the ALJ conclude that plaintiff did not suffer from a disability as defined by the Social Security Act.  AR at 31.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied.  AR at 8-10.  The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459.  To determine whether

substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.      The ALJ's RFC Determination Was Not Supported by Substantial Evidence**

Plaintiff claims the ALJ's RFC determination was not supported by substantial evidence. P. Mem. at 5-10. He argues the ALJ improperly rejected all of the medical opinions in the record, and instead relied on his own lay interpretation of the medical evidence to formulate plaintiff's RFC.[1] *Id.* at 9. Defendant contends the ALJ evaluated the medical evidence in the record and properly formulated an RFC supported by substantial evidence. D. Mem. at 3-8.

Residual functional capacity is what one can "still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. 20 C.F.R. § 416.945(a)(1)-(2); *see* Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

---

[1]      Although plaintiff primarily argues that the ALJ formulated plaintiff's RFC based on his lay interpretation of the medical data, plaintiff also briefly argues the ALJ erred in his rejection of the medical opinions in the record. *See* P. Mem. at 10. While plaintiff's argument could have been more detailed, it is sufficiently clear for the court to examine.

**1.      The ALJ Did Not Err in Rejecting the Medical Opinions in the Record**

The evidence an ALJ relies on in an RFC assessment includes medical evidence and opinions.  20 C.F.R. § 416.945(a)(3).  An ALJ considers the persuasiveness of the medical opinions and findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion.  20 C.F.R. § 416.920c(b)-(c).  The most important of these factors are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  The ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings."  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 416.920c(b)(2)).  The ALJ may, but generally is not required to, explain how he or she considered the other three factors.  20 C.F.R. § 416.920c(b)(2).  But when two or more medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is then required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(b)(3).

With respect to supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  Regarding consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

The ALJ briefly discusses the medical opinions of four physicians from plaintiff's medical records: (1) Dr. T. Schofield; (2) Dr. D. Subin; (3) Dr. Khashayar Nemovi; and

(4) Dr. Mark Frederick.  AR at 30.  The ALJ rejected all four opinions, noting that he found none of the opinions to be particularly persuasive.  *Id.*  Although the discussion of the opinions was minimal, the ALJ's opinion is sufficiently detailed for this court to review.  *See* P. Mem. at 10; AR at 30.

### a.   Dr. T. Schofield

Dr. Schofield evaluated plaintiff's SSI claim at the initial level.  AR at 65-69.  He determined plaintiff suffered from the medically determinable impairments of heart failure, substance addiction disorder (alcohol), substance addiction disorder (drugs), and amputation.  AR at 67.  Dr. Schofield also noted that while plaintiff's medically determinable impairments could reasonably be expected to produce plaintiff's pain symptoms, plaintiff's statements about the intensity, persistence, and functionally limiting effects of his pain were only partially consistent with his medical records.  AR at 68.  However, Dr. Schofield notes he was unable to contact plaintiff for further required information.  AR at 67.

Dr. Schofield failed to offer an opinion on plaintiff's physical or mental RFC due to insufficient evidence.  AR at 67-68.  Nor did Dr. Schofield provide any information about functional limitations related to plaintiff's impairments.  *See id.*  Accordingly, because Dr. Schofield's evaluation "does not identify any specific functional limitations that the ALJ could evaluate or adopt in the RFC . . . [the evaluation] was not a medical opinion that the ALJ was required to address."  *Sanchez v. Kijakazi*, 2023 WL 4743018, at *6 (E.D. Cal. July 25, 2023) (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)); *see also Stephanie Aleman M. v. Dudek*, 2025 WL 885254, at *6 (C.D. Cal. Mar. 20, 2025) (citing 20 C.F.R. §§ 404.1513(a)(2)(iii), 416.913(a)(2)(iii)).  Therefore, the ALJ did not err with respect to Dr. Schofield's opinion.

### b.   Dr. D. Subin

Dr. Subin evaluated plaintiff's SSI claim at the reconsideration level.  AR at 71-88.  Dr. Subin determined plaintiff suffered from the medically determinable impairments of amputation and bipolar depression.  AR at 81.  Based on his review of the record, Dr.

Subin opined plaintiff could: occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; and required an assistance device for long-distance ambulation. AR at 84-85. Accordingly, Dr. Subin opined plaintiff could perform light work as defined by SSA, and concluded plaintiff was not disabled. AR at 87.

The ALJ rejected Dr. Subin's opinion, stating that it was not particularly persuasive. AR at 30. The ALJ reasoned that Dr. Subin's "findings and limitations appear somewhat harsh based on the claimant's cardiac findings and need for a cane or some type of assistive device." *Id.* The ALJ then crafted an RFC that was more restrictive than Dr. Subin opined, incorporating Dr. Subin's opined postural limitations but limiting plaintiff to sedentary work only and requiring a cane for all ambulation. AR at 28. Even if the ALJ's analysis of the supportability and consistency factors was inadequate, the ALJ adopted a more restrictive RFC than Dr. Subin opined, thereby making any error harmless. *See Matthew C. v. Comm'r of Soc. Sec.*, 2025 WL 572891, at *14 (S.D. Cal. Feb. 21, 2025) (collecting cases); *see also Nuno v. Astrue*, 2010 WL 4553440, at *4 (C.D. Cal. Nov. 3, 2010) (ALJ erred on plaintiff's side in finding a more restrictive RFC than the purportedly improperly rejected opinion); *Adilene P. v. Kijakazi*, 2022 WL 633585, at *9-10 (D. Ore. Mar. 4, 2022) (same).

### c. **Dr. Khashaya Nemovi**

Dr. Khashayar Nemovi, an internal medicine physician resident, conducted a consultative examination of plaintiff on June 1, 2023. AR at 7453-57. Dr. Nemovi noted plaintiff had a history of congestive heart failure and a right, below-the-knee amputation. AR at 7453. He noted plaintiff was wearing his prosthesis during the visit, limped on his right side when walking, and otherwise used a wheelchair. AR at 7454. Otherwise, most findings appear normal. AR at 7454-56. Based on his examination of plaintiff, Dr. Nemovi opined plaintiff could: occasionally lift and carry 20 pounds and frequently lift

7

and carry 10 pounds; occasionally push and pull; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally bend, stoop, kneel, and crawl; never climb ladders or work at heights; occasionally walk on uneven terrain; and required a walker for long-distance ambulation.  AR at 7456.

The ALJ also rejected Dr. Nemovi's opinion, finding it not particularly persuasive.  AR at 30.  Just as with Dr. Subin, the ALJ reasoned that Dr. Nemovi's "findings and limitations appear somewhat harsh based on the claimant's cardiac findings and need for a cane or some type of assistive device."  *Id.*  The ALJ's assessment of plaintiff's RFC was also largely more restrictive than Dr. Nemovi's opinion.  *Compare* AR at 28 *with* AR at 7456-57.  The only aspect of Dr. Nemovi's opinion that was more restrictive than the ALJ's opined RFC was Dr. Nemovi's statement that plaintiff required a walker for long-distance ambulation.  *See* AR at 7456.  The ALJ adequately rejected this portion of Dr. Nemovi's opinion.  The ALJ notes that the use of a walker is not supported by Dr. Nemovi's own medical notes, which do not document the use of a walker during his appointment.  AR at 30; *see* AR at 7453-57.  Rather, Dr. Nemovi's notes state plaintiff arrived in a wheelchair while also wearing his prosthesis.  AR at 7454.  The notes indicate plaintiff can walk, though with a limp on the right side.  *Id.*  The ALJ also reasoned that Dr. Nemovi's recommendation of a walker was inconsistent with plaintiff's medical records and the recommendations of other medical professionals, including Dr. Subin and Dr. Frederick.  AR at 30.  The ALJ again points to the fact that plaintiff did not use a walker at the appointment.  AR at 30, 7453-57.  Moreover, neither Dr. Subin nor Dr. Frederick opined plaintiff required a walker, instead recommending a cane or "assistive device."  *See* AR at 785, 513.  Thus, while brief, the ALJ adequately addressed the supportability and consistency factors in rejecting Dr. Nemovi's walker recommendation.

Other than the walker recommendation, which was properly rejected, the ALJ crafted an RFC that was more restrictive than Dr. Nemovi's opinion.  AR at 28.  Thus, as explained above, even if the ALJ's analysis of the supportability and consistency factors

was inadequate, the ALJ adopted a more restrictive RFC than Dr. Nemovi opined, thereby making any error harmless. *See Matthew C.*, 2025 WL 572891, at *14 (collecting cases); *see also Nuno*, 2010 WL 4553440, at *4 (ALJ erred on plaintiff's side in finding a more restrictive RFC than the purportedly improperly rejected opinion); *Adilene P.*, 2022 WL 633585, at *9-10 (same).

### d.    Dr. Mark Frederick

Lastly, Dr. Mark Frederick, plaintiff's primary care physician, completed a physical medical source statement on September 18, 2023. AR at 7512-14. Dr. Frederick opined plaintiff has been diagnosed with congestive heart failure, a below-the-knee amputation of his right leg, and depression. AR at 7512. He noted plaintiff suffered from symptoms including low stamina, shortness of breath, and swelling. *Id.* Based on his treatment of plaintiff, Dr. Frederick opined plaintiff could: sit for eight hours in an eight-hour workday; stand for one hour out of an eight-hour workday; walk for one-half hour in an eight-hour workday; occasionally lift and carry less than 10 pounds; occasionally climb ramps or stairs or stoop; never climb ladders, balance, kneel, crouch, or crawl; required a cane while standing or walking; and would be absent from work four or more times per month. AR at 7512-14.

The ALJ rejected Dr. Frederick's opinion as well, finding it overly restrictive given plaintiff's medical records. AR at 30. The ALJ first notes Dr. Frederick's opinion is not well supported because it lacked "any support beyond noting diagnoses and cardiac symptoms that [plaintiff] denies to his cardiologist." *Id.* The ALJ accurately summarized Dr. Frederick's opinion, since Dr. Frederick simply checked boxes on the opinion form, providing no explanation as to why those limitations were medically indicated. *See* AR at 7512-14. As the Ninth Circuit has explained, an "'ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.'" *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (quoting *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012) (cleaned up)). As for the consistency factor, the ALJ notes that Dr. Frederick based his opinion on symptoms that plaintiff had repeatedly

denied having to his cardiologist. AR at 30. Dr. Frederick stated plaintiff suffered from low stamina, shortness of breath, and swelling. AR at 7512. But during visits with his cardiologist from 2022 through mid-2023, plaintiff denied chest pain, shortness of breath, palpitations, or dizziness. AR at 7427, 7430-32, 7481, 7484, 7488. Moreover, medical notes document plaintiff lacked edema in his lower extremities. AR at 7427, 7430-32, 7484, 7488. These records are inconsistent with Dr. Frederick's opinion.

Accordingly, the ALJ properly analyzed the supportability and consistency factors for Dr. Frederick's opinion, and his rejection of Dr. Frederick's opinion is supported by substantial evidence.

**2.      The ALJ Failed to Adequately Explain How Plaintiff's RFC Was Determined**

Plaintiff also argues the ALJ erred in rejecting all of the medical opinions in the record when formulating plaintiff's RFC because the "ALJ must have a medical opinion to support [his or] her residual functional capacity." P. Mem. at 8 (citing *de Gutierrez v. Saul*, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020), and *Goolsby v. Berryhill*, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017)). Plaintiff claims the ALJ impermissibly interpreted plaintiff's medical data and used his own lay judgment to craft plaintiff's RFC. *Id.* at 8-9.

Some courts have endorsed plaintiff's argument that an ALJ errs when rejecting all medical opinions before formulating the claimant's RFC. *See Lail v. Kijakazi*, 2021 WL 4741431, at *7-8 (E.D. Cal. Oct. 12, 2021); *see also Aguilar v. Comm'r of Soc. Sec.*, 2020 WL 1983744, at *7 (E.D. Cal. Apr. 27, 2020). But the Ninth Circuit has clarified "that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Even so, "[w]hen an ALJ rejects all medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence is less likely." *Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb. 1, 2011).

10

Here, the ALJ rejected all of the medical opinions as unpersuasive.  *See* AR at 30.  The ALJ determined that the opinions of the consultative examiner and state agency physician, who both opined light abilities, were "somewhat harsh."  AR at 30, 71-88, 7453-57.  The ALJ also determined that the opinion of plaintiff's treating physician, Dr. Frederick, who opined less than sedentary abilities, was overly restrictive.  AR at 30, 7512-14.  The ALJ then essentially met in the middle, determining plaintiff had the ability to perform sedentary work.  AR at 28.  The ALJ also incorporated the postural limitations opined by the state agency physician, notwithstanding his rejection of that opinion overall.  *See* AR at 30.

The ALJ thus rejected all of the medical opinions in the record and made his own determination as to plaintiff's RFC.  *See* AR at 28-30.  But the ALJ provides little in the way of explanation as to how or why he came to that determination.  The ALJ provides no analysis of the medical opinions or how they relate to one another apart from his rejection of the opinions.  *See* AR at 30.  And while the ALJ does indicate that plaintiff's medical records support his RFC determination, this appears to be largely the ALJ's own interpretation of plaintiff's medical records, which improper.  *See* AR at 29-30; *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("[A]s a lay person, an ALJ is "simply not qualified to interpret raw medical data in functional terms.").  In other words, the ALJ fails to explain how plaintiff's medical records support his RFC determination since he does not point to a medical opinion interpreting the records or offer his own analysis to support his conclusion.  The ALJ thus failed to provide sufficient reasoning to permit review of his decision.  *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

In sum, "[a]lthough an ALJ need not adopt the RFC opined by any particular physician, he must base his finding on some competent evidence." *Tawnya T. v. Saul*, 2019 WL 4422680, at *2 (C.D. Cal. July 9, 2019).  Based on his failure to adequately explain how he determined plaintiff's RFC following his rejection of all of the medical opinions in the record, the ALJ's RFC determination is not supported by substantial evidence.

11

**B.**     **The ALJ's Step 5 Determination Was Supported by Substantial Evidence**

Plaintiff also argues the ALJ erred at step five because the number of positions available for the three jobs identified by the vocational expert were so low that they cannot constitute a significant number of jobs in the national economy.  P. Mem. at 5.  Defendant disagrees and maintains the 21,100 jobs identified by the vocational expert constitute a significant number.  D. Mem. at 5.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC.  20 C.F.R. § 416.912.  The Commissioner may satisfy this burden through the testimony of a vocational expert.  *Lounsburry*, 468 F.3d at 1114.

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in evaluating whether the claimant is able to perform other work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 416.966(d)(1) (DOT is a source of reliable job information).  The DOT is the rebuttable presumptive authority on job classifications.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefore.  *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p).  But failure to so inquire can be deemed harmless error where there is no apparent conflict or the vocational expert provides sufficient support to justify deviation from the DOT.  *Id.* at 1154 n.19.

Here, the ALJ gave the VE a hypothetical of a person with essentially the RFC the ALJ ultimately found plaintiff to have.  AR at 28, 53-54.  The VE testified such a person

12

could perform the jobs of: document preparer (DOT 249.587-018), which has 15,600 jobs available in the national economy; callout operator (DOT 237-367.014), with 2,200 jobs available in the national economy; and addresser (DOT 209.587-010), with 3,300 jobs available in the national economy.  AR at 55.  The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE affirmed it was except where noted and explained that for anything not specifically addressed in the DOT he based his testimony on his experience in the field, continuing education, and professional publications.  AR at 56-57.

Plaintiff argues that the combined total of 21,100 available jobs is too low to constitute a significant number of jobs in the national economy.  P. Mem. at 5.  Plaintiff asserts that "[t]he law is clear in this circuit 21,100 jobs is not significant."  *Id.*  In general, however, the cases plaintiff cites involve job totals of 18,500 jobs or less.  *See id.* The only case plaintiff cites that involves more total jobs than the instant case, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519 (9th Cir. 2014), merely states that 25,000 jobs "present[ed] a close call," and ultimately held that 25,000 jobs was a significant number of jobs in the national economy.  *See Gutierrez*, 740 F.3d at 529. Thus, contrary to plaintiff's statement, "[t]he Ninth Circuit has declined to adopt a 'bright line' rule about the sufficiency of job numbers and has found that a comparison to other cases is instructive."  *Gill v. Comm'r of Soc. Sec.*, 2024 WL 1160500, at *15 (E.D. Cal. Mar. 18, 2024) (quoting *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012)).

A number of courts throughout the Ninth Circuit have concluded that 21,000 or fewer constitute a significant number of jobs in the national economy.  *See e.g., Elizabeth M. v. Saul*, 2021 WL 1060232, at *2 (C.D. Cal. Mar. 19, 2021) (holding 21,000 jobs is a significant number); *Jeter v. Berryhill*, 2018 WL 2121831, at *3 (C.D. Cal. May 8, 2018) (holding 20,000 jobs is a significant number); *Montalbo v. Colvin*, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (holding 12,300 jobs is a significant number); *Shaw v. Saul*, 2020 WL 13582509, at *6 (D. Ariz. Oct. 16, 2020) (holding that 20,797 constitutes a significant number of jobs); *Connolly v. Colvin*, 2016 WL 8730722, at *6 (E.D. Cal.

Sept. 16, 2016) (holding 19,000 jobs is sufficient). Accordingly, the court finds that the 21,100 total jobs identified by the ALJ constitutes a significant number of jobs in the national economy.

Therefore, the ALJ did not err at step five.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Nonetheless, it is appropriate for the court to exercise its discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there are outstanding issues to be resolved and remand is required. On remand, the ALJ shall reconsider all the evidence in the record and again assess plaintiff's RFC, providing a clear explanation for how the RFC determination was reached. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

Dated: <u>March 27, 2026</u>

_____
SHERI PYM
United States Magistrate Judge

15